THE PEOPLE
v.
· RUNKLE.

On an indictment for the forcible entry and detainer of a *church*, &c. it was held, that trustees of a church, as such, can only be in possession constructively, and that the possession of the key of the church, by one of them, is *prima facie* evidence of possession; but it does not preclude all inquiry as to the fact, who were the legal trustees, at the time of the entry.

Trustees of a church, *qua* trustees, can have only a constructive possession, by reason of having the right of possession.

THE PEOPLE *against* W. RUNKLE.

AN indictment, for a forcible entry and detainer, was found the 19th *June*, 1810, against the defendant, and *John Runkle* and *John Bicker*, since deceased, under the 3d section of the " act to prevent forcible entries and detainers." (Sess. 11. c. 6.)

The indictment stated, that the trustees of the *German* reformed church in the city of *New-York*, were seised in their demesne, as fee-simple, of and in a certain church, situate, &c. and in a certain school-house, situate, &c. with the appurtenances, and so continued, until *William Runkle*, minister of the gospel, *John Runkle*, minister of the gospel, and· *John Bicker*, on the 13th of *June*, 1810, with a strong hand, &c. entered the said church and school-house, and disseised and expelled the said trustees therefrom, &c.

The defendants traversed the indictment, and the same was removed, by *certiorari*, to this court. The cause was tried at the *New-York* sittings, before Mr. Justice *Thompson*, the 6th *June*, 1811.

The proceedings were commenced and prosecuted, at the instance, and under the direction of *Matthias Luff*, *George Gilfort*, *Ludewick Sherman*, and *Engle Frennd*.

*La Forest*, a witness, testified, that on the 13th *June*, 1810, in the afternoon, the church was opened, but by whom he did not know, and soon after, he saw *William Runkle* preaching in the pulpit. Besides the front door, there was a door leading to the house of the witness, which was nailed up, on the inside, the same afternoon. *John Gilfort* kept the key of the church, some months before. A number of people, on the 13th *June*, 1810, were seen at the side door of the church, and a black-smith attempting to open the door, but by whom the

door was opened, or whether from the inside or outside, the witness did not know. *William Runkle* was seen going into the church, in the same afternoon, and a man was seen taking the lock from the front door, who soon afterwards returned, and put the lock on again. *William Runkle* gave directions to the blacksmith as to the lock, and said, from the pulpit, that the congregation had suffered nearly six months, for not having the church opened. The sexton locked the church, and took away the key. It appeared that the blacksmith was employed by the trustees, in the presence of *William Runkle*, to open the door, but not to use violence, and no force was used, nor any thing broken. It was also testified, that the front door was open when *William Runkle* entered the church. A witness testified, that, about five years before, *William Runkle* was called as a minister ; and that the trustees had possession of the church for the congregation.

The counsel for the prosecution offered to prove, by parol evidence, that *George Gilfort, Lodowick Sherman, Matthias Luff*, and *Engle Frennd*, were the trustees of the church. It was objected, that they ought first to prove the existence of a corporation, and that the persons mentioned were duly elected trustees according to the charter; but the objection was overruled by the judge, who ruled that it was sufficient, for the prosecutors, that they were trustees *de facto*, and in possession of the church. That in a case of forcible entry and detainer, the only inquiry was, whether the party complaining was in possession of the property.

A witness was then called, who testified, that *Gilfort, Luff, Sherman* and *Frennd* had been elected trustees in *June*, 1808, but he did not know who kept the key : it was sometimes kept by the trustees, and sometimes by the sexton.

The defendant then offered to prove, that there was no force used; that the defendant was pastor of the church in question, having been called by the congregation, and

NEW-YORK,
October, 1811.

THE PEOPLE
v.
RUNKLE.

NEW-YORK,
October, 1811.

THE PEOPLE
v.
RUNKLE.

continued their pastor, for some time, without opposition; that a majority of the congregation were desirous of his continuing their pastor, but were opposed by the trustees, who, finding that they could not discharge Mr. *Runkle*, by a majority of the congregation, had locked up the church; that by these irregular proceedings, the corporation was dissolved, and that, after its dissolution, the congregation incorporated themselves anew, and became entitled to all the property of the former corporation; that they ordered the church to be opened, and Mr. *Runkle* to renew his functions, but directed the man employed to open the church, not to use force. The evidence thus offered was rejected by the judge, and the jury found the defendant guilty.

A motion was made to set aside the verdict.

*H. Bleecker*, for the defendant. This is a prosecution by persons calling themselves trustees of a church, against their own minister, for a forcible entry into the church.

This case does not come within the purview of the statute, for the prevention of forcible entries and detainers. The statute has reference only to entries into private houses and tenements, in the actual possession of some persons, against whom force may be used. To constitute an offence within the statute, the entry must be with force and violence; there must be an act of outrage, and a putting of some person in fear of bodily harm.* There was no person in possession of this church, who could be put in fear. The possession of a church is only constructive and technical. It is true, there is a case in 1 *Lev.* 90. of an indictment for a forcible entry into a parish church and parsonage house, but the facts and circumstances are not stated. There was no evidence that force was used in entering the church, nor any evidence of a forcible detainer; yet the verdict has found the defendant guilty of both.†

*Hawk. P. C. c. 64 s 1. 25. 27. Lambard, 140, 141, 142.

† 4 Johns. Rep. 198.

2. It is not shown that the defendant was present when the force, if any, was used. If he had agreed that force might be used, yet if he was not present, but came afterwards, he cannot be charged under the statute.[*]

3. There was no evidence of possession in the *ex trustees :* they held by virtue of their office ; and if permitted, we might have shown them to be out of office. Their office was gone. This is not a case in which there can be a trustee *de jure,* and a trustee *de facto.*

4. If the defendant had been permitted to show that the prosecutors were not the trustees, he must have been acquitted. There can be no *pedis possessio* of a church ; it depends upon the right. Admitting that the old trustees, after the dissolution of the corporation, held possession, yet it was a possession for the benefit of the new trustees.

5. The old trustees held in trust for the new corporation and the congregation. They had no right to shut the door of the church against the minister and congregation. The trustees have only the custody of the temporalities, for the use and benefit of the congregation. They have no right to judge of the fitness of the minister, and to exclude him and the congregation from the church. The trustees are not injured ; there was no force or violence against them ;[†] they have the same custody and possession they had before ; their right is not altered. The offence, therefore, contemplated by the statute, does not exist.

6. There was no proper evidence that the persons prosecuting were the trustees.

7. There was no evidence whatever of any entry into the school-house, yet the verdict was general, and restitution must go to the whole.[‡]

*Harris* and *Henry,* contra. There must have been force used in entering the church, as it was locked and fastened, expressly for the purpose of excluding the de-

[*] *Hawk.* c. 64. s. 24. *Bac. Ab. Forcible Entry, &c.* (B.)

[†] *Cro. Jac.* 18. *Hawk.* c. 64. s. 32.

[‡] *Sayer,* 169. *Bac. Ab. Forcible Entry, &c.* (G.)

NEW-YORK,
October, 1811.

THE PEOPLE
v.
RUNKLE.

* 2 *Roll. Ab.* 2.
2 *Ins*. 235, 236
† 1 *Sid* 101. 1
*Lev* 90. *Hawk*
c. 6 ‹. s. 31.
‡ *Cro. Car* 201.
486.*Dalton.* 315.

fendant. The doors were locked and bolted, and the side door was forced open.* But the jury have passed on the fact, and have found that there was a forcible entry. Churches and ecclesiastical possessions are as much the objects of that force which the statute has in view, as temporal property.† There may be an indictment for a forcible entry into an incorporeal hereditament.‡ The possession of the trustees, who have been denominated *ex trustees*, was fully shown. They had all the possession of which the subject was susceptible. The key was in the possession of *Gilfort*, one of the trustees. We deny that the corporation was dissolved : but that is a point which cannot be inquired into in this case. The new trustees, in fact, have been incorporated under a different name.

[SPENCER, J. The only question is, who were the legal trustees.]

To say that the possession of the old trustees is the possession of the new, is begging the question as to the right of the new trustees. But the court cannot, on this indictment, inquire into title Right or title to the property is no excuse. The statute was made to prevent persons from doing themselves right by force.

§ 3 *Johns. Rep.*

In *Jackson* v. *Nestles*,§ it was admitted, that there might be trustees *de jure*, and trustees *de facto*. This is not a case of a dissolution of a corporation, by failure of trustees ; it is a contention between two sets of trustees.

A *cestui que trust* cannot bring an action of ejectment against his trustee, who has the legal possession. Supposing, then, that the old trustees held in trust for the minister and congregation, yet the latter cannot enter, by force, on the trustees. The old trustees have the legal estate, and are clothed with the possession by law.

*Per Curiam.* The indictment states, that *The Trustees of the German Reformed Church*, were seised of the

NEW-YORK,
October, 1811.

THE PEOPLE
v.
RUNKLE.

church, until the forcible entry charged, and by which they were disseised. It was, then, a material question, upon the trial, who were those trustees. If the persons who directed the church to be opened, and by whose permission the defendant entered, were the legal trustees, there was no force. This fact the defendant offered to show, and it was overruled. There was no evidence that the prosecutors were such trustees, or had actual possession of the church, at the time, except what might be inferred from the fact, that they had been elected trustees in *June*, 1808, which was two years before the time in question, and that one of them kept the key for some months before. This was sufficient evidence, in the first instance, of possession, but it is not so conclusive as to preclude all inquiry into the fact who were the legal trustees in 1810. If those persons, by whose direction the defendant entered, were the trustees, the law would cast the possession of the church upon them. Trustees of a church, *qua* trustees, cannot be in possession, but constructively, by reason of having the right of possession. *Gilfort* might, as an individual, have had possession in fact, but the indictment does not charge the entry as upon him, but upon the trustees of the church; and the defendant ought, therefore, to have been permitted to have shown that the prosecutors were not the trustees.

Upon this ground, and without examining the other points that were raised, the verdict ought to be set aside.

New trial granted.